UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
OCT 15 2026
Nathan Ochsner, Clerk of Court

TYRA WILLIAMS, Plaintiff,

v.

WILLIAM MARSH RICE UNIVERSITY, Defendant.

Civil Action No. ____________________

JURY TRIAL DEMANDED

# PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

## I. INTRODUCTION

1. Plaintiff Tyra Williams brings this action against William Marsh Rice University ("Rice") alleging disability discrimination and failure to accommodate, race discrimination, retaliation, and related unequal treatment in Rice graduate educational programs. Plaintiff separately pleads sex discrimination as an alternative theory to the extent supported by the facts alleged below.

2. Plaintiff is a Black woman with documented disabilities arising from a traumatic brain injury sustained during a January 19, 2023 assault while serving as a high school administrator. She alleges that the injuries affected her neurological functioning, learning and information processing, vision, tolerance of light and sound, sustained screen exposure, and psychological well-being. These changes required medical treatment, rehabilitation, and disability accommodations to participate in educational programs.

3. Beginning in 2023, Rice had actual notice of Plaintiff's disabilities, accommodation needs, and complaints of discrimination. Plaintiff also began reporting disability and discrimination concerns to the United States Department of Education Office for Civil Rights (OCR) in 2023.

photographs documenting her participation and completion so that she could share this professional accomplishment with her board and professional community. She alleges that the official program photographs made available to her failed to provide a meaningful photographic record of her participation comparable to that of other participants.

76. Plaintiff alleges that, in the official Baker Institute photographs available to her concerning the program, she did not see any African American participants depicted. Plaintiff is African American. To her knowledge, she was the only African American participant completing the program and the only participant receiving disability accommodations. She offers these facts as relevant circumstances supporting her request for a fair investigation, not as proof that the photography decisions were motivated by race or disability.

77. Before the program concluded, Plaintiff expressly told program personnel that inclusion in the photographic record was important to her. Afterward, she received photographs or responses in which only part of her body, such as an arm, or a pen she had held was visible. Plaintiff alleges those images did not meaningfully depict her as a program participant.

78. During final program interviews, Plaintiff observed a photographer document other participants and program activities. Plaintiff alleges that the final cohort group photograph was taken while she was participating in her own scheduled interview, resulting in her absence from the principal photographic record of program completion. Plaintiff alleges she was not offered an equivalent opportunity for inclusion at that time.

79. On the final day of the program, Plaintiff personally raised the lack of meaningful photographs with Baker Institute representative Victoria Jupp while there was still an opportunity to arrange a photograph. Plaintiff alleges that Ms. Jupp laughed or scoffed during that conversation. Plaintiff understood the response as dismissive of her concern.

80. Plaintiff alleges that Ms. Jupp subsequently proposed that Plaintiff provide a testimonial to appear on the Baker Institute website as a corrective opportunity and stated that she would follow up. According to Plaintiff, months passed without the promised testimonial opportunity or an equivalent remedy being arranged.

81. Plaintiff thereafter sent a written escalation to Rice President Reginald DesRoches and the University office handling her discrimination concerns. The communication identified her prior requests for inclusion, the partial photographs, the final cohort photograph taken during her interview, Ms. Jupp's alleged reaction, and the unfulfilled testimonial commitment. It expressly raised concerns about race and disability inclusion and requested a testimonial or equivalent representation, a review of the circumstances, and a formal written response. Plaintiff has retained a copy of that correspondence; its precise transmission date and recipients may be established from the original message and headers.

82. Plaintiff seeks discovery of the full roster of the program, the complete collection of photographs, photographer instructions and schedules, decisions about selection and publication, communications concerning the final group photograph, and correspondence about the promised testimonial. Those records may confirm or contradict her understanding of the events and their cause.

83. On August 12, 2026, Paul R. Harris, an Equal Opportunity Specialist at Rice, emailed Plaintiff concerning her Baker Institute discrimination report. Mr. Harris asked whether Plaintiff wished to make a formal discrimination complaint, whether she alleged race discrimination, disability discrimination, or both, and whom she identified as responsible. Plaintiff alleges that these preliminary intake questions were not followed, before his initial determination, by a substantive interview concerning the photographic events, her requests for inclusion, or the supporting information she sought to present.

84. In correspondence dated August 31, 2026, Mr. Harris stated that he was making a determination based on the information he possessed at that point and invited Plaintiff to submit additional information. In a further response he wrote: "I did not need additional information to make that determination." Plaintiff alleges that Mr. Harris had thus reached an initial decision concerning whether the reported circumstances implicated Rice's discrimination policy before obtaining her detailed evidence or interviewing her about the underlying events.

85. On August 31, 2026, Plaintiff objected in writing that Mr. Harris had reached a conclusion without interviewing her about the incident or asking her substantive questions concerning what

4. Plaintiff alleges that, instead of consistently providing an effective accommodation process and neutrally reviewing her complaints, Rice subjected her to escalating hostility, exclusion, adverse academic treatment, retaliation, and humiliation. Plaintiff further alleges that faculty were repeatedly permitted to disregard or inconsistently implement approved accommodations, while her internal complaints were handled asymmetrically or left unresolved. Plaintiff alleges that Rice also denied meaningful access to available in-person MBA formats and later excluded her from the Global Field Experience because of an approved disability accommodation. Plaintiff alleges that the events of October 24, 2024 were the culmination of an ongoing pattern that had begun after her 2023 injury and protected complaints.

5. Plaintiff completed her MBA coursework in September 2026. She alleges, however, that Rice's conduct delayed her academic progress, caused additional expense and lost professional opportunities, and contributed to severe psychological and medical harm. The official degree-conferral date is not alleged here because it has not been verified against Rice's records.

**II. PARTIES**

6. Plaintiff Tyra Williams is an adult resident of Brazoria County, Texas, residing in Pearland. She enrolled in Rice's graduate business program and completed her MBA coursework in September 2026.

7. Defendant William Marsh Rice University ("Rice") is a private university located in Houston, Harris County, Texas, and operates graduate and professional education programs, including the Jones Graduate School of Business and programs associated with the Baker Institute for Public Policy.

8. Rice receives substantial federal financial assistance, including federal research funding, and is subject to federal civil rights statutes applicable to recipients of federal financial assistance. Rice also operates a private postsecondary place of education.

## III. JURISDICTION AND VENUE

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 42 U.S.C. § 1981; and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

10. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 because Rice resides in this District and a substantial part of the events giving rise to the claims occurred at Rice University in Houston, Harris County, Texas.

11. Rice is situated in Harris County and a substantial part of the events occurred in the Houston Division. Plaintiff resides in Brazoria County, assigned to the Galveston Division. Plaintiff requests the Court to direct any appropriate intra-district transfer rather than dismiss the action solely for an incorrect divisional designation.

## IV. FACTUAL ALLEGATIONS

### A. Injury, Medical Records, and Disability-Related Needs

12. Plaintiff was admitted to MBA@Rice, Rice's online MBA program, in October 2022. On January 19, 2023, while serving as an assistant principal at Travis Early College High School, Plaintiff was physically assaulted by seven students while carrying out her professional responsibilities. Plaintiff alleges that the assault resulted in a traumatic brain injury and related physical, neurological, visual, and psychological impairments. Rice did not cause the original assault; the claims here concern Rice's actions and omissions after it was informed of Plaintiff's disabilities and accommodation needs.

13. Plaintiff alleges that the assault substantially altered her ability to function and learn. Activities that previously had been routine, including receiving, processing, understanding, and

retaining information, became more difficult. She also experienced significant changes in vision and sensitivity to light, sound, and prolonged exposure to computer screens. The injury affected both her physical functioning and her psychological well-being.

14. Plaintiff underwent multiple rounds of rehabilitation and medical treatment directed toward restoring or adapting her ability to process information, manage sensory stimulation, and participate in everyday and academic activities. She alleges that substantial rehabilitation was required before she could resume effective learning and program participation. The nature, dates, and extent of those treatments are reflected in medical and rehabilitation records.

15. Plaintiff took time away from her Rice program during her recovery. Before returning to the program after that period away, she provided Rice with medical notes, supporting documentation, and accommodation recommendations from multiple physicians and other treating providers addressing the physical, neurological, visual, and psychological effects of the assault. She alleges that she remained transparent with Rice about her limitations and continued furnishing supporting medical documentation as accommodation questions arose.

16. Plaintiff alleges that obtaining and maintaining accommodations required repeated requests and assistance from several doctors despite the medical records already supplied to Rice. Based on the documentation provided before she returned and thereafter, Plaintiff alleges that Rice had actual notice of her substantially changed learning abilities, sensory restrictions, and physical and psychological limitations when it made the challenged accommodation and participation decisions.

17. Plaintiff also informed Rice, and provided supporting medical documentation from treating providers, that following the January 19, 2023 assault she experienced posttraumatic stress disorder (PTSD), severe anxiety, depression, and seizures. Plaintiff attributes these conditions to the assault. She alleges that Rice received medical documentation identifying these conditions

and related accommodation needs before she returned to the program after her leave and remained aware of them when considering her subsequent accommodation requests and complaints.

**B. Spring 2023 Return and Initial Internal Advocacy**

18. After taking leave following the January 2023 injury, Plaintiff sought to resume studies during Spring 2023. She alleges that Rice administrator Adam Herman had previously assured her in writing that she could return to her existing MBA enrollment without submitting a new application.

19. On April 3, 2023, a Student Services Advisor communicated by email on Herman's behalf that Plaintiff would need to appear before a committee before she could return and register for classes. Plaintiff challenged that condition using Herman's prior written communication, which she understood to be inconsistent with the new requirement.

20. Plaintiff did not appear before the committee and did not submit a new application. After her objection, Rice permitted her to register for classes. Plaintiff alleges that Rice did not acknowledge the inconsistency and that this was among her first efforts to use internal university processes after the injury. These facts are pleaded as history and notice, not as an allegation that reapplication ultimately was required.

21. Plaintiff alleges that she first pursued concerns internally and subsequently contacted the United States Department of Education Office for Civil Rights during 2023 after those early efforts proved unsatisfactory. She continued to use Rice's internal processes for later and separate incidents. She will establish the precise date of her earliest OCR contact from the relevant correspondence.

**C. Repeated Requests for Accessible MBA Delivery**

22. After the January 2023 assault, Plaintiff alleges that the online MBA format became substantially more difficult and, at times, inaccessible because her documented neurological and visual impairments, sensory sensitivities, seizure-related concerns, and psychological symptoms affected her ability to tolerate prolonged screen exposure, light, sound, and extended virtual learning sessions. These limitations were the medical basis for her requests to move to an in-person MBA format.

23. Rice offered several MBA program formats, including formats involving substantial in-person instruction. Plaintiff repeatedly requested permission to transfer from the online MBA program to an in-person program as a disability-related accommodation. She alleges that she explained the medical reasons for the requested change and that Rice already possessed supporting documentation from multiple treating providers.

24. Plaintiff alleges that Rice denied each of her requests to move to an in-person MBA format, notwithstanding its prior notice of the limitations that made extended online coursework difficult for her. Plaintiff continued to be required to undertake substantial online learning. She alleges that Rice did not meaningfully explore with her whether a transfer or another comparably effective, feasible accommodation would provide accessible participation in the MBA curriculum.

**D. 2023 Strategy Course, Accommodation Complaints, and University Notice**

25. During 2023, Plaintiff took Strategy (MGMT 570), taught by Maura Claire Harford. Plaintiff alleges that Professor Harford did not consistently provide the timely feedback contemplated by Plaintiff's accommodations, challenged Plaintiff's academic honesty in a manner Plaintiff disputed, and contributed to an adverse course outcome. The parties' contemporaneous communications and the precise accommodation letter control the disputed requirements.

26. On June 13, 2023, Plaintiff emailed Rice's disability resource personnel and Jones School administrators notice of an additional PTSD diagnosis and supporting medical documents, explaining its effect on her studies.

27. On June 15, 2023, Plaintiff emailed Dean Barbara Ostdiek, Professor Harford, and Richard Anthony Baker regarding Harford's accusations and uncertainty about how to complete the course. Plaintiff disputed dishonesty, asked for clear instructions, and expressly requested to finish the class without retaliation.

28. On July 11, 2023, Plaintiff raised a specific alleged failure to provide timely feedback, describing submitted module work and the effect she believed the delay had on her preparation for the final examination. The contemporaneous thread included Professor Harford, Dean Ostdiek, Richard Anthony Baker, and Paul Harris. Professor Harford disputed that the approved accommodations dictated the method or timing of feedback and asserted that Plaintiff would receive the same feedback timeline as peers.

29. Plaintiff alleges that she pursued a grade appeal and that no meaningful grade-appeal decision corrected the disputed grade, which she alleges remains on her transcript. The alleged grade-appeal inaction is distinct from Rice's discrimination complaint process. On January 18, 2024, Rice's Access, Equity and Equal Opportunity office transmitted a Report of Findings on a complaint filed in 2023; Plaintiff promptly disputed those findings. Plaintiff does not allege that Rice issued no report at all.

**E. Other Program Access and Accommodation Concerns**

30. As part of the accommodation process, Rice approved or implemented an accommodation permitting Plaintiff to keep her camera off during live virtual participation when needed because of her disability-related screen limitations.

63. Plaintiff further alleges that she submitted grade appeals and repeatedly wrote to Seiichi Matsuda, Dean of Graduate and Postdoctoral Studies, seeking review of adverse academic decisions. She alleges that she did not receive a substantive response from him and that her academic grade appeals were not meaningfully resolved. The precise emails, applicable process, and appeal timeliness remain matters for documentary verification.

64. Plaintiff repeatedly sought intervention from Rice's senior institutional leadership, including the President of Rice University and members of his cabinet; Jones Graduate School of Business leadership, deans, and administrators; leadership of the Baker Institute for Public Policy; attorneys or representatives within Rice's EEO or Equal Opportunity office; and personnel in the ADA Resource Office and disability-accommodations functions. Plaintiff alleges that her concerns and requests frequently went unanswered or did not receive a meaningful investigation, explanation, or corrective response.

65. Plaintiff alleges that she personally sent or caused communications to be sent about accommodations, discrimination, retaliation, academic exclusion, the Baker Institute photography concern, and treatment by university personnel to leaders or offices in these categories. She contends that the communications put the institution on notice of her allegations and of ongoing risks of denied access; copies, recipients and dates of those communications will be identified from contemporaneous records.

66. The President, cabinet officials, Jones School deans, Baker Institute leaders, EEO attorneys and ADA Resource Office personnel are described here as persons or offices notified of complaints or participating in institutional processes. Plaintiff does not make each such individual a defendant and does not assert that every recipient personally ordered each challenged academic decision.

67. Plaintiff alleges that faculty members repeatedly failed to follow, or inconsistently followed, her approved disability accommodations and that Rice did not provide an effective mechanism to correct the problem. Plaintiff alleges that repeated reports of faculty noncompliance did not result in timely, meaningful corrective action, effectively permitting the accommodation failures to continue.

68. In the summer of 2025, Plaintiff could no longer access the disability accommodation letters she was required to provide to her professors. She contacted a newly assigned or interim Rice disability accommodations administrator, whom she had not previously met, and scheduled a Zoom meeting in order to regain access to the documentation needed to use her approved accommodations.

69. Plaintiff alleges that the interaction was hostile from the outset and that the administrator placed additional barriers in the way of obtaining the accommodation letter. Plaintiff experienced the manner in which she was spoken to as unusually hostile and vitriolic, particularly because the meeting was her first interaction with that administrator and the purpose of the meeting was simply to obtain documentation of accommodations Rice had already approved.

70. Upon receiving an accommodation letter for Spring 2026, Plaintiff observed changes from prior accommodation language. She contends that some revised wording characterized her requests in a manner that could lead faculty to mistake approved disability accommodations for optional favors or academic concessions. The precise versions of the letter, rather than Plaintiff's characterization of their tone, are the best evidence of those changes.

71. Plaintiff asked Rice to explain the changes to her accommodation language and alleges that no substantive explanation was provided. She contends that the revised language and the manner in which it was administered contributed to her difficulty obtaining consistent implementation of her approved accommodations. The competing letters and communications will establish the precise terms and sequence.

**K. 2026 Residential Experiences, Baker Institute Program, and EEO Correspondence**

72. During a spring 2026 MBA residential session, Plaintiff became afraid for her physical safety because of the conduct of another student. Plaintiff alleges that by that point she had so little confidence that Rice would fairly receive a complaint from her that she was afraid to report the safety concern because she expected that reporting could result in adverse consequences for her rather than protection.

73. In a later student interaction, Plaintiff reported to a faculty member that another student was treating her in a manner she experienced as openly discriminatory and hostile, including criticism of the pace at which she was working. Plaintiff alleges that her pace was affected by documented

31. Rice Business describes the Global Field Experience (GFE) as a core experiential component of its MBA curriculum. Plaintiff sought to participate in the GFE as part of her MBA education.

32. Plaintiff alleges that Barbara Bennett, a senior Jones School administrator with responsibility for MBA@Rice, told Plaintiff in substance that having her camera off would be offensive to clients. Plaintiff was therefore not permitted to participate in the GFE and was instead assigned a substitute course.

33. Plaintiff alleges that this decision penalized her for using an approved disability accommodation, excluded her from an educational opportunity available to other MBA students, and substituted a different academic experience because Rice did not want a client-facing student to use the accommodation Rice had approved.

34. Plaintiff alleges that her accommodation requests were repeatedly met with resistance, hostility, criticism, and embarrassment rather than a consistent interactive effort to identify and implement effective accommodations. She alleges that virtually every significant request for disability-related access became another point of conflict.

35. Plaintiff was told in substance by faculty that they did not want her to continue because they did not know how to accommodate her. Plaintiff understood this statement to mean that her disability and accommodation needs were being treated as reasons she should not remain in the program.

36. During this period, Rice personnel caused police to be sent to Plaintiff's home in connection with concerns involving her wellbeing. Plaintiff experienced the incident as escalating, humiliating, and stigmatizing, particularly in the context of her ongoing disability related disputes with the University.

37. Beginning in 2023, Plaintiff filed reports or complaints with the U.S. Department of Education Office for Civil Rights (OCR) relating to disability accommodations and

discrimination. She also communicated concerns to Rice directly. Plaintiff alleges Rice had notice of her protected conduct through those university communications and any OCR notices actually received by Rice; the precise dates of notice will be established by emails and correspondence.

**F. September 2024 Report Concerning Racially Stereotyped Treatment**

38. On September 6, 2024, Plaintiff emailed Professor Craig Carroll, copying Professor Duane Windsor and Rice's disability accommodation address. Plaintiff wrote that she had sought clarification from Windsor about recurrent assignment feedback asking her to "define the ask" and perceived his response as implying that she wanted him to give her something rather than earn her grade.

39. Plaintiff contemporaneously objected that she perceived the remark as invoking a negative stereotype about African American students. She also explained that her disability accommodations called for helpful academic feedback and that she was requesting clarification of academic expectations, not preferential grading. The email establishes her contemporaneous complaint and notice; she has not yet supplied Windsor's original response as an independently verified verbatim quotation.

**G. October 2024 New Enterprises Exclusion and Academic Consequences**

40. During the New Enterprises course in Fall 2024, Plaintiff alleges that several members of her assigned group used ChatGPT or other artificial intelligence tools in preparing course work. Plaintiff reported concerns about that use and about academic integrity to Rice. Plaintiff states that she completed her own assigned contributions independently, from scratch, without using ChatGPT, and declined to participate in the conduct she reported.

41. Plaintiff alleges that her traumatic brain injury and related cognitive and visual limitations caused her to need additional time to complete her original work. She contends that certain group

members treated her harshly, criticized her pace, and excluded her from some communications or work sessions because independently produced assignments took her longer. She alleges that she reported this treatment to Rice.

42. On or about October 24, 2024, Rice removed Plaintiff from her New Enterprises group shortly before its final team presentation. Plaintiff alleges that Rice made and implemented that decision without first asking what occurred, telling her what conduct was attributed to her, inviting her explanation, or giving her an opportunity to present her completed work and supporting evidence. No Rice administrator or instructor asked Plaintiff for her side of the events before excluding her. She learned of the removal after the decision had been made and was not allowed to participate in the group presentation despite having completed substantial original work.

43. At the time she was removed from her New Enterprises group, Plaintiff was the only African American member of that group. She alleges that the other members were not removed from the group in the same manner. She offers that comparative circumstance as part of her claim that race may have influenced the unexplained removal and seeks production of contemporaneous communications and group-decision records.

44. Plaintiff does not contend that the group's racial composition alone proves discrimination. She alleges that her selective removal, her disability-related need for additional work time, the lack of a clear explanation, her reports of academic-integrity concerns, the adverse grade, and Rice's handling of those matters are relevant in combination to her claims of disparate treatment and retaliation.

45. After the removal, Plaintiff repeatedly requested the specific reasons for Rice's decision and asked what, if anything, she had been accused of doing. She alleges that Rice did not provide an intelligible explanation or a process through which she could contest the decision before its

academic consequences occurred. Her allegation is that she was excluded without an opportunity to respond beforehand, not merely that she disagreed with a result reached after hearing from both sides.

46. Plaintiff alleges that Rice accepted adverse accounts from others without first obtaining her account or reviewing her completed work. In December 2024, an Equal Opportunity Specialist offered to review certain concerns about her group removal, the amount of time allowed for a substitute presentation, and compliance with accommodations. Plaintiff acknowledges that communication but alleges that Rice never subsequently communicated findings, conclusions, or a disposition concerning her New Enterprises group removal or the evidence of student misconduct she reported. The offered review did not reinstate her to the team or reverse the grade consequences.

47. After the October 24, 2024 incident, Peter Rodriguez, Dean of Rice's Jones Graduate School of Business, sent Plaintiff a letter that Plaintiff experienced as unusually harsh and condemnatory. Plaintiff alleges that the tone of the letter treated her as though serious wrongdoing had already been established even though she still had not been given a clear accusation or a meaningful opportunity to respond.

48. Plaintiff wrote back asking, in substance, what she had done to warrant being addressed in that manner. She alleges that she did not receive a substantive answer and still has not been told what facts justified the tone, assumptions, or adverse treatment reflected in the letter.

49. Plaintiff alleges that she supplied Rice leadership with a text-message exchange in which, according to Plaintiff, a teammate admitted cheating. Plaintiff reported her belief that this student was involved in a broader academic-dishonesty operation within the Jones Graduate School of Business. Plaintiff alleges that she separately reported other team members' use of ChatGPT while completing her own assigned work independently, without ChatGPT, despite the

additional time she needed because of her disabilities. Plaintiff does not allege that Rice accused her of using ChatGPT. Plaintiff alleges that Rice did not communicate investigative findings or a resolution concerning the material she furnished. The alleged text messages establish what Plaintiff says she reported; they are not pleaded as a court determination that any student committed misconduct.

50. Plaintiff received a D in New Enterprises after the group removal and alleges that the grade did not fairly reflect the original work she completed or the consequences of her exclusion. Plaintiff challenged the grade and the resulting need to retake the course. She ultimately retook New Enterprises, identified in correspondence as MGMT 531, in Spring 2026.

51. On April 8, 2026, while Plaintiff was preparing to retake MGMT 531, Assistant Dean Nicole Pellegrino emailed that faculty members Nique Frajors and Hesam Panahi had suggested a "team-of-one" option. Pellegrino stated that the course permitted group or solo teams, the solo workload would be adjusted, and the option was offered to support success. Plaintiff had not requested to work alone. She rejected the proposal as especially troubling given her 2024 involuntary removal from a team, and she sought an explanation for why faculty specifically proposed it to her without first consulting her. Plaintiff alleges that no satisfactory explanation was provided. Plaintiff does not allege Rice compelled her to pursue the solo option.

52. Plaintiff alleges that the cumulative effect of continued online instruction despite her documented limitations, exclusion from the Global Field Experience because of her camera-off accommodation, group members' alleged mistreatment of her disability-related work pace, removal from New Enterprises after reporting academic-integrity concerns, lack of communicated findings concerning her evidence, the adverse grade and retake, and the unsolicited 2026 solo-team proposal impeded her equal participation. Plaintiff viewed these

events as part of a pattern of exclusion and alleged retaliation; she seeks to establish the reasons for Rice's actions through the evidence.

**H. Injuries Following the New Enterprises Grade**

53. Plaintiff alleges that, after learning on or about December 2, 2024 that she had received a D in New Enterprises, she experienced an acute psychological crisis and attempted suicide. She subsequently received inpatient psychiatric treatment. Plaintiff offers these allegations to describe the seriousness and consequences of the events, subject to medical proof and to the remedies legally available under the pleaded causes of action.

54. Plaintiff alleges that her removal, adverse grade, required retake, lack of communicated findings concerning her reports and supporting evidence, and the 2026 solo-team suggestion caused or contributed to educational delay, emotional distress, treatment expenses, and lost professional opportunities, subject to proof and the remedies legally available under each asserted cause of action.

**I. 2025 Business Law Course and Reports to Senior Leadership**

55. In Spring 2025, Plaintiff enrolled in Business Law, identified in university correspondence as MGMT 521, taught by Andrew W. Swain with Lee Ann Butler as lead instructor. Plaintiff alleges that extensive reading, abbreviated assignment turnaround times, her documented cognitive and visual limitations, and the manner in which requested additional time was implemented impaired her ability to demonstrate mastery.

56. On May 2, 2025, Plaintiff emailed Rice’s disability resources address, Professor Swain, and student services personnel describing her traumatic brain injury, visual impairment, PTSD, extensive effort, and difficulty completing assignments within the available time. She described a score of 9 out of 20 on an assignment and asked about tutoring and additional academic support.

The disability office responded that it was contacting the Business School to investigate options for extended time.

57. On May 3, 2025, Plaintiff forwarded an extensive complaint to President Reginald DesRoches, Dean Peter Rodriguez, James Weston, Professor Swain, and the disability resources office. She alleged that additional assignment time had been denied despite her approved accommodations; identified scores of zero on an early assignment, 13 out of 20 on another, and 9 out of 20 on another; and described a class exchange and follow-up email she experienced as humiliating. She explained that she was seeking fair access to learning rather than an exemption from academic standards.

58. Professor Swain disputed Plaintiff's description of the classroom exchange in writing, stated that the class recording supported his account, and expressed a desire to help students learn. Plaintiff disputes his characterization. Plaintiff alleges that the exchange discouraged her from requesting further one-on-one help.

59. On May 7, 2025, Plaintiff emailed Dean Barbara Ostdiek, President DesRoches, and disability resources personnel, copying other Rice officials. She requested assignment extensions she believed were required by her accommodation letter, clearer grading criteria, and review of her work by another grader. She also reported perceived disability discrimination and other unequal treatment.

60. Rice's response described accommodations it believed feasible given the course design and stated that the approved accommodations had been met for coursework. The school increased the examination time allowance and separately provided an extension for the final. Rice did not approve Plaintiff's request for an alternate grader, and later correspondence stated that already graded assignments would not be reopened. Plaintiff disputed the adequacy of those measures because, she alleges, the earlier assessments had already been affected.

61. On May 12 and 13, 2025, Plaintiff sent additional documentation and objected to the handling of the examination accommodation and the earlier assignments. On May 20, 2025, Paul Harris of Rice's Equal Opportunity office asked whether she wished to file a formal or informal complaint or was documenting concerns. Plaintiff alleges that subsequent handling failed to correct the earlier academic consequences. On July 9, 2025, she reported the matter and resulting failing course grade to an OCR contact.

**J. Continued University Notice, Appeals, and Accommodation Administration**

62. Plaintiff alleges that similar patterns of exclusion, heightened scrutiny, one-sided decision making, and differential treatment continued through 2025 and 2026 in the MBA program, Rice administrative processes, and her participation in the Baker Institute policy program.

63. Plaintiff further alleges that she submitted grade appeals and repeatedly wrote to Seiichi Matsuda, Dean of Graduate and Postdoctoral Studies, seeking review of adverse academic decisions. She alleges that she did not receive a substantive response from him and that her academic grade appeals were not meaningfully resolved. The precise emails, applicable process, and appeal timeliness remain matters for documentary verification.

64. Plaintiff repeatedly sought intervention from Rice's senior institutional leadership, including the President of Rice University and members of his cabinet; Jones Graduate School of Business leadership, deans, and administrators; leadership of the Baker Institute for Public Policy; attorneys or representatives within Rice's EEO or Equal Opportunity office; and personnel in the ADA Resource Office and disability-accommodations functions. Plaintiff alleges that her concerns and requests frequently went unanswered or did not receive a meaningful investigation, explanation, or corrective response.

65. Plaintiff alleges that she personally sent or caused communications to be sent about accommodations, discrimination, retaliation, academic exclusion, the Baker Institute

photography concern, and treatment by university personnel to leaders or offices in these categories. She contends that the communications put the institution on notice of her allegations and of ongoing risks of denied access; copies, recipients and dates of those communications will be identified from contemporaneous records.

66. The President, cabinet officials, Jones School deans, Baker Institute leaders, EEO attorneys and ADA Resource Office personnel are described here as persons or offices notified of complaints or participating in institutional processes. Plaintiff does not make each such individual a defendant and does not assert that every recipient personally ordered each challenged academic decision.

67. Plaintiff alleges that faculty members repeatedly failed to follow, or inconsistently followed, her approved disability accommodations and that Rice did not provide an effective mechanism to correct the problem. Plaintiff alleges that repeated reports of faculty noncompliance did not result in timely, meaningful corrective action, effectively permitting the accommodation failures to continue.

68. In the summer of 2025, Plaintiff could no longer access the disability accommodation letters she was required to provide to her professors. She contacted a newly assigned or interim Rice disability accommodations administrator, whom she had not previously met, and scheduled a Zoom meeting in order to regain access to the documentation needed to use her approved accommodations.

69. Plaintiff alleges that the interaction was hostile from the outset and that the administrator placed additional barriers in the way of obtaining the accommodation letter. Plaintiff experienced the manner in which she was spoken to as unusually hostile and vitriolic, particularly because the meeting was her first interaction with that administrator and the purpose of the meeting was simply to obtain documentation of accommodations Rice had already approved.

70. Upon receiving an accommodation letter for Spring 2026, Plaintiff observed changes from prior accommodation language. She contends that some revised wording characterized her requests in a manner that could lead faculty to mistake approved disability accommodations for optional favors or academic concessions. The precise versions of the letter, rather than Plaintiff's characterization of their tone, are the best evidence of those changes.

71. Plaintiff asked Rice to explain the changes to her accommodation language and alleges that no substantive explanation was provided. She contends that the revised language and the manner in which it was administered contributed to her difficulty obtaining consistent implementation of her approved accommodations. The competing letters and communications will establish the precise terms and sequence.

**K. 2026 Residential Experiences, Baker Institute Program, and EEO Correspondence**

72. During a spring 2026 MBA residential session, Plaintiff became afraid for her physical safety because of the conduct of another student. Plaintiff alleges that by that point she had so little confidence that Rice would fairly receive a complaint from her that she was afraid to report the safety concern because she expected that reporting could result in adverse consequences for her rather than protection.

73. In a later student interaction, Plaintiff reported to a faculty member that another student was treating her in a manner she experienced as openly discriminatory and hostile, including criticism of the pace at which she was working. Plaintiff alleges that her pace was affected by documented neurological and vision limitations. Although Plaintiff viewed herself as the person receiving the hostile treatment, Rice placed her under a stay-away directive in connection with the incident. Plaintiff alleges that the response reinforced her belief that complaints she made would be turned against her rather than neutrally investigated.

74. In matters involving race-related concerns, Plaintiff observed that Rice repeatedly assigned Black EEO personnel to communicate with her even though other personnel were available. Plaintiff perceived this pattern as an effort to manage the appearance of racial neutrality. Plaintiff does not allege that the race of the assigned EEO personnel itself constituted discrimination; she alleges that, regardless of who was assigned, the underlying process remained one-sided, nonresponsive, and failed to meaningfully investigate her allegations.

75. Plaintiff completed the Baker Institute policy leadership program associated with Rice University. Her employer paid approximately $5,000 for her participation. Plaintiff requested photographs documenting her participation and completion so that she could share this professional accomplishment with her board and professional community. She alleges that the official program photographs made available to her failed to provide a meaningful photographic record of her participation comparable to that of other participants.

76. Plaintiff alleges that, in the official Baker Institute photographs available to her concerning the program, she did not see any African American participants depicted. Plaintiff is African American. To her knowledge, she was the only African American participant completing the program and the only participant receiving disability accommodations. She offers these facts as relevant circumstances supporting her request for a fair investigation, not as proof that the photography decisions were motivated by race or disability.

77. Before the program concluded, Plaintiff expressly told program personnel that inclusion in the photographic record was important to her. Afterward, she received photographs or responses in which only part of her body, such as an arm, or a pen she had held was visible. Plaintiff alleges those images did not meaningfully depict her as a program participant.

78. During final program interviews, Plaintiff observed a photographer document other participants and program activities. Plaintiff alleges that the final cohort group photograph was

taken while she was participating in her own scheduled interview, resulting in her absence from the principal photographic record of program completion. Plaintiff alleges she was not offered an equivalent opportunity for inclusion at that time.

79. On the final day of the program, Plaintiff personally raised the lack of meaningful photographs with Baker Institute representative Victoria Jupp while there was still an opportunity to arrange a photograph. Plaintiff alleges that Ms. Jupp laughed or scoffed during that conversation. Plaintiff understood the response as dismissive of her concern.

80. Plaintiff alleges that Ms. Jupp subsequently proposed that Plaintiff provide a testimonial to appear on the Baker Institute website as a corrective opportunity and stated that she would follow up. According to Plaintiff, months passed without the promised testimonial opportunity or an equivalent remedy being arranged.

81. Plaintiff thereafter sent a written escalation to Rice President Reginald DesRoches and the University office handling her discrimination concerns. The communication identified her prior requests for inclusion, the partial photographs, the final cohort photograph taken during her interview, Ms. Jupp's alleged reaction, and the unfulfilled testimonial commitment. It expressly raised concerns about race and disability inclusion and requested a testimonial or equivalent representation, a review of the circumstances, and a formal written response. Plaintiff has retained a copy of that correspondence; its precise transmission date and recipients may be established from the original message and headers.

82. Plaintiff seeks discovery of the full roster of the program, the complete collection of photographs, photographer instructions and schedules, decisions about selection and publication, communications concerning the final group photograph, and correspondence about the promised testimonial. Those records may confirm or contradict her understanding of the events and their cause.

83. On August 12, 2026, Paul R. Harris, an Equal Opportunity Specialist at Rice, emailed Plaintiff concerning her Baker Institute discrimination report. Mr. Harris asked whether Plaintiff wished to make a formal discrimination complaint, whether she alleged race discrimination, disability discrimination, or both, and whom she identified as responsible. Plaintiff alleges that these preliminary intake questions were not followed, before his initial determination, by a substantive interview concerning the photographic events, her requests for inclusion, or the supporting information she sought to present.

84. In correspondence dated August 31, 2026, Mr. Harris stated that he was making a determination based on the information he possessed at that point and invited Plaintiff to submit additional information. In a further response he wrote: "I did not need additional information to make that determination." Plaintiff alleges that Mr. Harris had thus reached an initial decision concerning whether the reported circumstances implicated Rice's discrimination policy before obtaining her detailed evidence or interviewing her about the underlying events.

85. On August 31, 2026, Plaintiff objected in writing that Mr. Harris had reached a conclusion without interviewing her about the incident or asking her substantive questions concerning what happened. In her reply, Plaintiff quoted an earlier assessment she attributed to Mr. Harris that exclusion from promotional or marketing materials did not negatively affect educational opportunities. Plaintiff alleges that this framing failed to address her complete concerns about representation, race, disability, and the administration of the program. The full email chain will establish the exact wording and sequence.

86. Rice's published Policy 830A describes procedures for certain discrimination and harassment matters, including an opportunity for the reporting person to provide relevant information and, in covered investigations, written findings. Plaintiff alleges that Mr. Harris made a policy-based determination without providing the full fact-finding opportunity she requested. The record

presently available does not establish whether a formal investigation was opened, whether Mr. Harris personally contacted Baker Institute personnel, or which procedures Rice considered applicable. Plaintiff seeks relevant records to resolve those questions.

87. Plaintiff alleges that this response reflected a recurring pattern in which University officials reached adverse or dismissive conclusions concerning her reports without adequately considering her side of the underlying dispute. She offers the documented August 2026 correspondence as evidence of notice to Rice and of the manner in which it handled her report. Plaintiff does not allege that a departure from an internal policy, by itself, establishes a violation of federal law.

88. Plaintiff alleges that her other protected complaints, including accommodation concerns and the New Enterprises removal, were likewise met with conclusions or adverse decisions without a meaningful opportunity to explain or respond. As to the Baker Institute report, Plaintiff acknowledges that Mr. Harris asked initial complaint-intake questions and later invited her to submit additional information, but alleges that the substantive determination preceded a meaningful review of her specific evidence.

89. Despite her attempts to escalate these matters, Plaintiff alleges that institutional leaders and complaint-processing offices did not provide timely, evenhanded substantive responses. The asserted nonresponses are relevant to Rice's alleged notice, its opportunity to correct the problems, and the pattern of its response to protected complaints; silence alone is not pleaded as independently sufficient to prove discrimination.

90. Plaintiff alleges that deans and senior administrators repeatedly denied requests without a substantive explanation, failed to respond, or communicated a result after consulting the person she had complained about without conducting a comparable inquiry of Plaintiff. She alleges that she repeatedly asked why decisions had been made, why accommodation language had been changed, or what she had supposedly done wrong, and received no meaningful answer. This

repeated lack of engagement caused Plaintiff to feel that her account did not matter and that the University's stated complaint, accommodation, and fairness procedures were not meaningfully available to her.

91. After the October 2024 incident, Plaintiff told Rice that she experienced the treatment as an "academic lynching." Plaintiff used that phrase contemporaneously to convey what she perceived as one-sided condemnation, isolation, and punishment without a meaningful opportunity to be heard. Plaintiff pleads the phrase here as her own contemporaneous description of the experience, not as a separate cause of action or legal conclusion.

92. Plaintiff alleges that the cumulative treatment isolated her within the Rice community. She became afraid to join clubs and reluctant to participate fully in optional student activities because she feared additional scrutiny, accusation, embarrassment, or retaliation.

**L. Educational Consequences and Continuing Effects**

93. Plaintiff paid substantial tuition and fees to obtain a Rice MBA. Plaintiff entered the program with an established history of meeting rigorous academic and professional standards. She does not seek exemption from Rice's legitimate academic standards; she alleges that accommodation disputes, heightened suspicion, exclusion, isolation, and unresolved complaints, rather than ordinary academic rigor alone, materially burdened her opportunity to complete the program on equal terms.

94. Plaintiff alleges that these events were not isolated misunderstandings. She alleges a sustained pattern in which disability-related needs were treated as problems; faculty noncompliance with approved accommodations was tolerated or insufficiently corrected; allegations about Plaintiff were credited quickly; her own complaints were minimized, redirected, or left uninvestigated; and her participation in ordinary academic, residential, experiential, and student opportunities was repeatedly restricted. She alleges that the cumulative

effect materially burdened her education, isolated her from the Rice community, and made completion substantially more difficult than it otherwise would have been.

95. Plaintiff alleges that Rice departed from its published nondiscrimination, disability accommodation, complaint, and fairness procedures when responding to her concerns. She alleges that the relevant policies and the documented handling of particular reports can be established through emails, applicable policy versions, investigative records, and testimony. Plaintiff invokes those departures as possible circumstantial evidence relevant to statutory claims, not as a separate independent federal cause of action.

96. Plaintiff continued pressing for access to her education and ultimately completed the MBA program in September 2026. She alleges that the discrimination and retaliation materially delayed and burdened her path to completion.

97. The events beginning in 2023 are pleaded as relevant background, notice, context, evidence of discriminatory or retaliatory intent, and part of the factual sequence leading to timely adverse acts, including the October 24, 2024 removal and later conduct. Plaintiff does not rely solely on a continuing violation theory to make otherwise untimely discrete acts independently actionable.

## V. AUTHORITIES RELEVANT TO PLAINTIFF'S CLAIMS (LIMITED PURPOSE)

The authorities below identify controlling legal standards, persuasive analogies, and material limitations. They are not offered as proof that Rice committed any alleged act. The cited Fifth Circuit and Supreme Court holdings apply only within their actual scope. Plaintiff acknowledges that neither procedural unfairness alone nor disagreement with academic grading establishes discrimination or retaliation.

### A. Meaningful access and reasonable accommodations

Alexander v. Choate, 469 U.S. 287, 300-01 (1985), recognizes that Section 504 requires meaningful access to the benefits a federally funded program actually offers and that reasonable

modifications may be necessary, without requiring fundamental alteration or guaranteed academic results. Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448, 453-55 (5th Cir. 2005), describes allegedly ineffective educational aids for university students and the reasonableness inquiry but resolved sovereign immunity, not ultimate liability. Its sovereign-immunity holding has no application to private Rice. [1]

**B. Persuasive private-university accommodation authority**

Argenyi v. Creighton University, 703 F.3d 441, 448-51 (8th Cir. 2013), reversed summary judgment against a hearing-impaired medical student who alleged a private university failed to provide effective communication accommodations. The decision supports an individualized assessment of whether proposed aids permit meaningful participation. It is persuasive, not binding in this Court, and does not establish a categorical right to transfer to a different MBA delivery format. [2]

**C. University racial discrimination and contract rights**

Tolbert v. Queens College, 242 F.3d 58, 68-75 (2d Cir. 2001), discusses fact-specific proof of intentional race discrimination in graduate education under Title VI and Section 1981; it is persuasive, not binding authority. Plaintiff must prove discriminatory intent. For Section 1981, race must have been a but-for cause of the asserted contractual injury. Comcast Corp. v. National Association of African American-Owned Media, 589 U.S. 327, 333-41 (2020). Tolbert's discussion of punitive relief under Title VI has been superseded by Barnes v. Gorman, 536 U.S. 181 (2002). [3]

**D. Doe v. Rice University: exclusion before hearing the student's account**

Doe v. William Marsh Rice University, 67 F.4th 702, 708-10 (5th Cir. 2023), addressed a Rice student who was restricted from campus before a reasonable chance to present his side. The Fifth Circuit majority also criticized Rice's treatment of conflicting evidence and inadequate notice of

the basis for the sanction. It reversed summary judgment on his Title IX sex-discrimination claim because the particular record could support an inference of sex-based bias. Doe was later allowed to submit a written response, and the Fifth Circuit did not hold that procedural unfairness alone creates a federal cause of action.

The comparison here is specific: Plaintiff alleges Rice removed her from her New Enterprises team on October 24, 2024 before asking what happened, before allowing her to respond to others' accounts, and before considering her original work and evidence. She alleges that the removal prevented her participation in the final team presentation and led to a D and a retake; she further alleges that no findings resolving her report were ever communicated. She relies on the one-sided procedure as circumstantial evidence bearing on her separately alleged disability discrimination, race discrimination, and retaliation, not as a free-standing constitutional due-process claim against a private university. The Doe court also affirmed dismissal of a distinct contract claim because the relevant student-code procedures expressly disclaimed contractual rights. [4]

**E. Accommodation procedures and educational environment**

Guckenberger v. Boston University, 957 F. Supp. 306, 310-18 (D. Mass. 1997), considered allegations of burdensome private-university accommodation documentation, review procedures, and educational hostility at the pleading stage. After trial, Guckenberger v. Boston University, 974 F. Supp. 106, 114-15 (D. Mass. 1997), found certain initial disability-documentation restrictions unlawful but did not categorically require every requested course substitution or modification. These district-court decisions are nonbinding and are relevant only as examples of examining whether a private university reasonably administered an accommodation process. [5]

**F. Fifth Circuit disability-harassment framework**

Estate of Lance v. Lewisville Independent School District, 743 F.3d 982, 995-96 (5th Cir. 2014), set out the elements of a Section 504 claim for disability-related peer harassment: harassment based on disability, serious interference with educational access, actual institutional knowledge, and deliberate indifference. The court ruled for the school district on its facts. Plaintiff cites that framework only for her allegations that fellow students targeted her disability-related work pace and that Rice received reports. C.C. v. Hurst-Euless-Bedford Independent School District, No. 15-10098, slip op. at 4-6 (5th Cir. Mar. 9, 2016) (unpublished), underscores the need for concrete facts connecting challenged treatment to disability. [6]

**G. Limits of employee-harassment analogy**

Davis v. Monroe County Board of Education, 526 U.S. 629, 650 (1999), established deliberate-indifference limits for student-on-student sexual harassment under Title IX; Estate of Lance drew on that reasoning in the disability peer-harassment context. Harrison v. Klein Independent School District, No. 20-20115, slip op. at 6-8, 12-13 (5th Cir. Apr. 7, 2021) (unpublished), distinguishes deliberate-indifference and reasonable-accommodation proof, affirmed judgment for the district on the record, and did not definitively decide whether all employee conduct fits the same harassment framework. Plaintiff's direct accommodation allegations do not rest solely on a peer-harassment theory. [7]

**H. Accrual and timeliness**

Frame v. City of Arlington, 657 F.3d 215, 236-40 (5th Cir. 2011) (en banc), applies the analogous Texas two-year personal-injury limitations period in a Rehabilitation Act and ADA context and explains federal accrual when a claimant knew or should have known of denial of access. Bullock v. University of Texas at Arlington, No. 22-10013, slip op. at 2-6 (5th Cir. Feb. 15, 2024) (unpublished), addressed a narrow Texas savings-statute issue after an earlier lawsuit;

it did not adjudicate the asserted accommodation violation or establish tolling merely because an OCR complaint was filed. [8]

**I. Emotional-distress damages under Spending Clause claims**

Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 221-30 (2022), held that emotional-distress damages are unavailable in private actions under Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act. The complaint therefore does not demand emotional-distress damages under Section 504. The decision concerns remedies rather than whether Plaintiff has pleaded a disability-access violation. [9]

**J. Punitive damages and remedies**

Barnes v. Gorman, 536 U.S. 181, 187-90 (2002), held that punitive damages are unavailable in private actions under Section 504, Title II of the ADA, and Title VI. Plaintiff does not demand punitive damages under those statutes; any request is confined to a distinct claim for which such damages are legally available, such as Section 1981 if the applicable requirements are met. [10]

**EXPLANATORY FOOTNOTES TO SECTION V**

[1] Alexander, 469 U.S. at 300-01, defines meaningful program access, not a guarantee of the preferred accommodation or result. Bennett-Nelson, 431 F.3d at 453-55, reversed dismissal on Eleventh Amendment grounds; the discussion of effective educational aids is relevant, but its sovereign-immunity holding has no bearing on this private defendant.

[2] Argenyi, 703 F.3d at 448-51, applies a meaningful-access and effective-communication inquiry to different disabilities and university services. A court must consider a requested accommodation against the actual program and alternatives; the case does not guarantee the student's preferred delivery format.

[3] Tolbert, 242 F.3d at 68-75, involved a graduate student and a race-discrimination jury verdict. It is persuasive on fact-specific proof of discriminatory treatment. Its discussion of remedies must be read in light of Barnes v. Gorman, 536 U.S. 181 (2002), which held punitive damages unavailable under Title VI. Comcast, 589 U.S. at 333-41, controls Section 1981 but-for race causation.

[4] Doe, 67 F.4th at 708-10, is cited for the majority's criticism of adverse treatment before the student could meaningfully respond. Plaintiff's asserted parallel is precise: Rice removed her from New Enterprises before asking for her account, giving her notice of allegations, or considering her completed work. Doe later did respond during

his separate discipline process; Plaintiff alleges no such opportunity before her group removal. The case rested on evidence that one-sided treatment might reflect sex bias under Title IX, not a universal constitutional due-process rule, and it rejected Doe's contract claim based on Rice's code disclaimer.

[5] Guckenberger, 957 F. Supp. at 310-18, addressed claims and motions at a preliminary stage; 974 F. Supp. at 114-15 and following pages reported mixed post-trial findings. Neither ruling controls this Court or requires transfer from an online to an in-person MBA track in every circumstance.

[6] Estate of Lance, 743 F.3d at 995-96, supplied the Fifth Circuit Section 504 peer-harassment standard but entered judgment for the school on its record. C.C. v. Hurst-Euless-Bedford ISD, No. 15-10098, slip op. at 4-6 (5th Cir. Mar. 9, 2016) (unpublished), likewise rejected insufficient disability-causation allegations. These public elementary and secondary school cases are analogies to, not proof of, liability for a private graduate program.

[7] Davis, 526 U.S. at 650, concerns peer sexual harassment. Harrison, No. 20-20115, slip op. at 6-8, 12-13, is unpublished and affirmed judgment for a school district on evidence of deliberate indifference. It is relevant to limits and proof, not as a plaintiff-side finding of disability harassment against a graduate university.

[8] Frame, 657 F.3d at 236-40, supplies the accrual and limitations principles. Bullock, No. 22-10013, slip op. at 2-6, involves a narrowly applicable savings rule based on an earlier filed lawsuit, not automatic tolling through agency complaints. Plaintiff does not allege an earlier civil action sufficient to invoke that rule.

[9] Cummings, 596 U.S. at 221-30, restricts emotional-distress damages under Section 504. Plaintiff's allegations of emotional harm may remain relevant to context or other legally available relief, but Cummings itself does not confer a damages entitlement.

[10] Barnes, 536 U.S. at 187-90, bars punitive damages under Section 504, Title II, and Title VI. The distinct question of possible punitive damages under a sufficiently pleaded Section 1981 claim is not settled by Barnes and requires independent proof.

## VI. CAUSES OF ACTION

### COUNT I. SECTION 504 OF THE REHABILITATION ACT

98. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

99. Plaintiff is an otherwise qualified individual with a disability within the meaning of Section 504, and Rice is a recipient of federal financial assistance.

100. Rice knew of Plaintiff's disabilities and accommodation requests. Plaintiff alleges that Rice denied meaningful access by refusing to reasonably evaluate an accessible alternative to prolonged online instruction, excluding her from the Global Field Experience in connection with

2005), describes allegedly ineffective educational aids for university students and the reasonableness inquiry but resolved sovereign immunity, not ultimate liability. Its sovereign-immunity holding has no application to private Rice. [1]

**B. Persuasive private-university accommodation authority**

Argenyi v. Creighton University, 703 F.3d 441, 448-51 (8th Cir. 2013), reversed summary judgment against a hearing-impaired medical student who alleged a private university failed to provide effective communication accommodations. The decision supports an individualized assessment of whether proposed aids permit meaningful participation. It is persuasive, not binding in this Court, and does not establish a categorical right to transfer to a different MBA delivery format. [2]

**C. University racial discrimination and contract rights**

Tolbert v. Queens College, 242 F.3d 58, 68-75 (2d Cir. 2001), discusses fact-specific proof of intentional race discrimination in graduate education under Title VI and Section 1981; it is persuasive, not binding authority. Plaintiff must prove discriminatory intent. For Section 1981, race must have been a but-for cause of the asserted contractual injury. Comcast Corp. v. National Association of African American-Owned Media, 589 U.S. 327, 333-41 (2020). Tolbert's discussion of punitive relief under Title VI has been superseded by Barnes v. Gorman, 536 U.S. 181 (2002). [3]

**D. Doe v. Rice University: exclusion before hearing the student's account**

Doe v. William Marsh Rice University, 67 F.4th 702, 708-10 (5th Cir. 2023), addressed a Rice student who was restricted from campus before a reasonable chance to present his side. The Fifth Circuit majority also criticized Rice's treatment of conflicting evidence and inadequate notice of the basis for the sanction. It reversed summary judgment on his Title IX sex-discrimination claim because the particular record could support an inference of sex-based bias. Doe was later allowed to submit a written response, and the Fifth Circuit did not hold that procedural unfairness alone creates a federal cause of action.

The comparison here is specific: Plaintiff alleges Rice removed her from her New Enterprises team on October 24, 2024 before asking what happened, before allowing her to respond to others' accounts, and before considering her original work and evidence. She alleges that the removal prevented her participation in the final team presentation and led to a D and a retake; she further alleges that no findings resolving her report were ever communicated. She relies on the one-sided procedure as circumstantial evidence bearing on her separately alleged disability discrimination, race discrimination, and retaliation, not as a free-standing constitutional due-process claim against a private university. The Doe court also affirmed dismissal of a distinct contract claim because the relevant student-code procedures expressly disclaimed contractual rights. [4]

**E. Accommodation procedures and educational environment**

Guckenberger v. Boston University, 957 F. Supp. 306, 310-18 (D. Mass. 1997), considered allegations of burdensome private-university accommodation documentation, review procedures, and educational hostility at the pleading stage. After trial, Guckenberger v. Boston University, 974 F. Supp. 106, 114-15 (D. Mass. 1997), found certain initial disability-documentation restrictions unlawful but did not categorically require every requested course substitution or modification. These district-court decisions are nonbinding and are relevant only as examples of examining whether a private university reasonably administered an accommodation process. [5]

**F. Fifth Circuit disability-harassment framework**

Estate of Lance v. Lewisville Independent School District, 743 F.3d 982, 995-96 (5th Cir. 2014), set out the elements of a Section 504 claim for disability-related peer harassment: harassment based on disability, serious interference with educational access, actual institutional knowledge, and deliberate indifference. The court ruled for the school district on its facts. Plaintiff cites that framework only for her allegations that fellow students targeted her disability-related work pace and that Rice received reports. C.C. v. Hurst-Euless-Bedford Independent School District, No. 15-10098, slip op. at 4-6 (5th Cir. Mar. 9, 2016) (unpublished), underscores the need for concrete facts connecting challenged treatment to disability. [6]

**G. Limits of employee-harassment analogy**

Davis v. Monroe County Board of Education, 526 U.S. 629, 650 (1999), established deliberate-indifference limits for student-on-student sexual harassment under Title IX; Estate of Lance drew on that reasoning in the disability peer-harassment context. Harrison v. Klein Independent School District, No. 20-20115, slip op. at 6-8, 12-13 (5th Cir. Apr. 7, 2021) (unpublished), distinguishes deliberate-indifference and reasonable-accommodation proof, affirmed judgment for the district on the record, and did not definitively decide whether all employee conduct fits the same harassment framework. Plaintiff's direct accommodation allegations do not rest solely on a peer-harassment theory. [7]

**H. Accrual and timeliness**

Frame v. City of Arlington, 657 F.3d 215, 236-40 (5th Cir. 2011) (en banc), applies the analogous Texas two-year personal-injury limitations period in a Rehabilitation Act and ADA context and explains federal accrual when a claimant knew or should have known of denial of access. Bullock v. University of Texas at Arlington, No. 22-10013, slip op. at 2-6 (5th Cir. Feb. 15, 2024) (unpublished), addressed a narrow Texas savings-statute issue after an earlier lawsuit; it

a camera-off accommodation, failing to implement approved accommodations in particular courses, obstructing access to accommodation letters, and failing to correct reported disability-related exclusion and faculty noncompliance. Plaintiff contends that these actions denied her the opportunity to participate on substantially equal terms because of disability or disability-related needs; the reasonableness and feasibility of requested modifications remain factual questions.

101. Plaintiff further alleges that Rice had actual notice of repeated disability discrimination and accommodation complaints, including reports that faculty were not following approved accommodations, and nevertheless failed to provide an effective corrective response. Plaintiff alleges that Rice acted intentionally and with deliberate indifference to known risks that its conduct and omissions were excluding or disadvantaging Plaintiff because of disability.

102. As a direct and proximate result, Plaintiff suffered legally compensable economic and consequential losses, educational delay, and other damages and equitable injuries for which relief is available under Section 504.

**COUNT II. TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

103. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

104. Rice operates a private postsecondary place of education and is a place of public accommodation within the meaning of Title III of the ADA.

105. Plaintiff alleges that Rice failed to provide reasonable modifications and equal access to its educational opportunities by denying appropriate consideration of accessible instruction and excluding her from the Global Field Experience because of an approved camera-off accommodation.

106. Plaintiff seeks only prospective equitable relief under ADA Title III for any ongoing program access or university dealings as to which she can establish a real and immediate future

injury; she does not seek damages under Title III. Plaintiff acknowledges that completed coursework alone does not automatically establish standing for a prospective injunction.

**COUNT III. TITLE VI RACE DISCRIMINATION**

107. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

108. Plaintiff is Black. Rice receives federal financial assistance and is subject to Title VI.

109. Plaintiff alleges that intentional racial bias was a factor in Rice's adverse credibility determinations, failure to fairly investigate her complaints, and one-sided decisions. In particular, she was the only African American in the New Enterprises group when she was singled out for unexplained removal, and the Baker Institute's official photographs available to her depicted no African American participants, including Plaintiff. She alleges that Rice's response to her concerns focused on her manner or tone rather than engaging with the substance. She offers these facts together with the broader record as circumstantial evidence of intentional race discrimination, subject to proof.

110. Plaintiff repeatedly complained of race discrimination and alleges that Rice nevertheless continued the challenged treatment. Plaintiff seeks all legal and equitable relief available for intentional race discrimination under Title VI.

**COUNT IV. 42 U.S.C. SECTION 1981**

111. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

112. Plaintiff's enrollment, payment of tuition and fees, and participation in Rice's graduate programs created contractual relationships concerning the performance, benefits, privileges, terms, and conditions of her educational relationship with Rice.

113. Section 1981 protects the right to make and enforce contracts without racial discrimination, including the performance and enjoyment of the benefits and conditions of a contractual relationship.

114. Plaintiff alleges that race was a but-for cause of at least some challenged interference with the benefits, privileges, terms, and conditions of her educational contractual relationship, including her unexplained removal from the New Enterprises group and allegedly unequal treatment during Baker Institute programming. She relies on specific comparative and circumstantial facts described above, not solely on her membership in a protected racial group.

115. Plaintiff also alleges that Rice retaliated against her for opposing and reporting race discrimination, thereby interfering with rights protected by § 1981.

**COUNT V. TITLE IX SEX DISCRIMINATION**

116. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

117. Plaintiff is a woman, and Rice is an education program or activity receiving federal financial assistance and subject to Title IX.

118. Plaintiff alleges that she also perceived sex-based unequal treatment in Rice's assessment of her credibility and responses to her complaints. She presently lacks a verified sex-based comparator or a decision-maker statement expressly linking the challenged actions to her sex. Plaintiff asserts this count only insofar as additional evidence can supply a plausible causal connection; a claim based merely on her status as a woman or her dissatisfaction with academic decisions would be insufficient.

119. The existence, nature, and timing of any sex-specific comparator or sex-based statement must be established from actual records. Plaintiff does not contend that Doe v. Rice independently establishes sex discrimination against her.

## COUNT VI. RETALIATION FOR PROTECTED CIVIL RIGHTS ACTIVITY

120. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

121. Plaintiff engaged in protected activity by requesting disability accommodations, opposing disability discrimination, reporting race and sex discrimination, and filing or pursuing complaints with OCR and Rice administrators.

122. Plaintiff alleges that, after Rice received her accommodation requests and civil-rights complaints, it took or permitted materially adverse actions including increased academic-integrity scrutiny, exclusion from New Enterprises group participation, an adverse grade and required retake, denial of in-person access requests, exclusion from the GFE in connection with an approved accommodation, barriers to letters and faculty implementation, and unfavorable handling of further EEO and Baker Institute complaints. She further alleges that escalation to the President and his cabinet, Jones School leadership, Baker Institute leadership, EEO attorneys, and ADA personnel failed to secure effective corrective action. She alleges a causal connection through timing, communications, decision-making records, and deviations from routine process, to be established by proof.

123. The temporal sequence, repeated notice to senior administrators, and alleged departures from normal procedures support Plaintiff's claim that protected civil rights activity was a cause of the adverse actions.

124. Plaintiff seeks all remedies available for retaliation under Section 504, the ADA, Title VI, Title IX, and 42 U.S.C. § 1981, as applicable to the proven facts.

## COUNT VII. DISABILITY-RELATED HARASSMENT (SECTION 504 ALTERNATIVE THEORY)

125. Plaintiff incorporates by reference the preceding factual allegations to the extent relevant to this count.

126. Plaintiff alleges a pattern of disability-related hostility and exclusion, including repeated disregard of approved accommodations, difficulties obtaining and implementing accommodation letters, treatment of disability-related needs as obstacles to program participation, academic isolation, and exclusion from the Global Field Experience allegedly because of her approved camera-off accommodation.

127. Plaintiff further alleges that the October 24, 2024 New Enterprises group removal without a meaningful explanation, repeated adverse academic decisions, and institutional responses to her complaints contributed to an intimidating, humiliating, and unequal educational experience. Plaintiff does not contend that every disputed academic decision was necessarily motivated by disability; she alleges that the documented pattern and relevant statements demonstrate the disability-related character of the challenged conduct.

128. Plaintiff alleges that the conduct, considered together and in context, was sufficiently serious and persistent to interfere materially with her access to educational benefits and opportunities. Plaintiff alleges that personnel responsible for addressing discrimination received repeated actual notice through written communications and requests for intervention, including reports to appropriate administrators, but failed to take effective corrective measures. The identities, timing, authority, responses, and adequacy of notice are subject to proof.

129. Plaintiff seeks no duplicative recovery and requests relief on this theory only insofar as Section 504 and controlling law permit it. She does not seek emotional-distress or punitive damages under Section 504.

## VII. INJURIES AND DAMAGES

130. Plaintiff alleges economic and consequential harm including additional educational costs, delayed degree-related earnings and professional opportunities, medical and treatment expenses, loss of the GFE educational opportunity, burdens associated with substitute and repeated coursework, costs associated with educational experiences she alleges were diminished by discriminatory exclusion, and other out-of-pocket and consequential losses to be established through evidence and expert testimony as appropriate.

131. Plaintiff also alleges severe humiliation, emotional distress, mental anguish, loss of dignity, psychological injury, fear of reporting safety concerns, and social and academic isolation. Plaintiff seeks such nonpecuniary compensatory damages only under claims for which federal law permits their recovery, including 42 U.S.C. § 1981 to the extent proven.

132. Plaintiff seeks punitive damages only under claims for which punitive damages are legally available, including § 1981 if the evidence proves the required level of culpability. Plaintiff does not seek punitive or emotional distress damages under a Spending Clause statute to the extent controlling law prohibits those categories of damages.

## VIII. REQUEST FOR RELIEF

133. Plaintiff requests all actual economic, consequential, and other legally recoverable damages in amounts supported by admissible evidence and determined at trial. Plaintiff does not plead a verified dollar figure for monetary losses at this time. Each category of relief is sought only to the extent authorized by the statute or other cause of action on which Plaintiff prevails.

134. Plaintiff requests judgment against Defendant and: (a) actual economic, out-of-pocket and consequential damages to the extent recoverable under each successful claim; (b) noneconomic compensatory damages only to the extent a successful cause of action permits them; (c) punitive damages only on a legally eligible claim, such as 42 U.S.C. § 1981, if every required element is

proved; (d) appropriate declaratory or prospective relief, if standing and jurisdiction exist; (e) lawful review or correction of academic records and other appropriate equitable relief; (f) taxable costs and, if recoverable, reasonable attorney fees for any counsel who appears; (g) pre- and postjudgment interest where allowed; and (h) other proper relief. Plaintiff does not seek emotional-distress or punitive damages under Section 504 or other statutes insofar as such remedies are barred by controlling law.

**IX. JURY DEMAND**

135. Plaintiff demands a trial by jury on all issues triable of right by jury.

Respectfully submitted,

Tyra Williams, Pro Se

Tyra Williams, Plaintiff, Pro Se

9205 Sunbonnet Drive

Pearland, Texas 77584

Telephone: 346-773-8476

Email: DrTyraWms@gmail.com

Date signed: 10-15-26